**THE LAW OFFICE OF JONATHAN RUDNICK, L.L.C.**
**ATTORNEY I.D. NO. 034721990**
**788 SHREWSBURY AVENUE**
**BUILDING 2, SUITE 204**
**TINTON FALLS, N.J. 07724**
**732-842-2070**
**FAX:  732-879-0213**
**OUR FILE NO.  14821**

| | |
|---|---|
| **BARRY LEVY, INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED**<br><br>        **Plaintiffs,**<br><br>**Vs.**<br><br>**BROTHER'S  MOBILITY  LLC,  JOHN  DOES  1-10, JEAN C. LAVARIN,**<br><br>        **Defendants.** | **UNITED  STATES  DISTRICT  COURT  FOR  THE DISTRICT OF NEW JERSEY**<br><br>**DOCKET NO.  1:21-CV-10460**<br><br>                **CIVIL ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br>**DEMAND FOR TRIPLE DAMAGES**<br>**DEMAND FOR ATTORNEY FEES**<br>**DEMAND FOR CLASS CERTIFICATION**<br>**DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF** |

The  plaintiff,  Barry  Levy,  residing  in  **Arizona**  by  way  of  complaint  against  the

defendants as follows:

<u>**UNDERLYING FACTS**</u>

1.      On  July  29,  2020  the  defendant,  Brothers  Mobility  LLC  doing  business  at  46

Georgetown  Rd.,  Wrightstown,  NJ  08562  is  a  seller  and  buyer  of  automobiles  in

the state of New Jersey.

2.      Brothers  Ability  specialized  auto  dealership  with  expertise  in  wheelchair  vans,

meaning,  they  are  aware  that  the  individuals  were  purchasing  their  vehicles  are

handicapped and must use wheelchairs. https://www.brothersmobilityvans.com/

**WELCOME TO BROTHERS MOBILITY**

We are a licensed automobile dealership in Wrightstown, New Jersey. We are primarily specialize in wheelchair vans and also carry some regular vehicles.

46 Georgetown Road
Wrightstown, NJ 08562

Business Phone: 609-353-1808
Cell: 732-822-8767
Fax: 609-353-1898
Email: brothersmobilityllc@gmail.com

3.　　The plaintiff, Barry Levy, at all times was a resident of Arizona and disabled.

4.　　Brothers Mobility LLC was advertising a 2008 Chrysler town and country with 74,524 miles for sale, for $13,999 on the Internet through eBay. The miles represented were 74,524.  See exhibit A.

5.　　At all relevant times both the plaintiff and the subject vehicle are now located in Arizona. The plaintiff has always resided in Arizona and the vehicle was transported from New Jersey to Arizona post purchase.  It was delivered to Arizona on or about August 9, 2020.

6.　　The plaintiff was handicapped and disabled and needed a specialized vehicle to address his disability. The plaintiff is wheelchair bound.

7.　　The vehicle was specially fitted with a wheelchair, handicapped transfer seat and hand control. See exhibit A.

8.　　The plaintiff is 72 years of age and has been disabled for eighteen years and had hip replacement surgery 22 years ago.  The plaintiff's left leg does not work, he cannot walk, and is confined to a wheelchair.

9.    The vehicle sale was confirmed by way of email. See exhibit C. The price of vehicle was $12,000 plus $199 Doc fee making the total balance due by the plaintiff of $11,699. See exhibit C.

10.   The plaintiff provided a $500 deposit. See exhibit C.

11.   The plaintiff signed a bill of sale (July 29, 2020) listing the price and shipping charges in addition to a Documentary Service charge of $199. See exhibit B.

12.   The plaintiff wired the defendants the remainder of the contract, $11,699.

13.   The subject vehicle when sold to the plaintiff had two active, unrepaired recalls both affecting the safety. Per the National Highway Transportation Safety Administration there was a recall **R03 14V-373** which could cause unintended engine to shut off and increased the risk of crash.  See exhibit E.  The recall was issue in 2014.

14.   Another recall issued on July 7, 2020, prior to the plaintiff's purchase, that was incomplete. This recall was the emblem, or the emblem retainer could become potentially a projectile during a crash with deployment which would result in occupant injury. See exhibit F.

15.   **On August 14, 2020**, the vehicle had the master cylinder replaced by Borst Automotive in Arizona for $504.00

16.   **On August 21, 2020**, the plaintiff had the vehicle inspected by Blackwell Automotive in Phoenix Arizona. The inspection revealed significant defects in the brakes. The plaintiff was forced to remove and replace the brake line, replace the calipers. Exhibit G page 1. The vehicle had 74,702 miles. Only 178 miles post purchase miles.

17.    On October 10, 2020, the vehicle caught on fire from the front brakes that were worked on the defendant.

18.    Blackwell Confirmed the vehicle was extremely rusty and there were potentially other problems. Exhibit G page 1

19.    **On October 13, 2020**, the plaintiff had work done on the vehicle by Kar's Mobile Service. See exhibit G, page 2. The vehicle had 74,727 miles. Only 203 miles post purchase.

20.    They confirmed on **October 13, 2020** the vehicle was not roadworthy.  There was also an issue with the main brakes. See exhibit G, page 2.

21.    On **December 10, 2020**  the <u>ramp stopped working</u> and the plaintiff was stuck in the van. It was manually release, to permit exit. The door track was broken, had severe rust, and was fixed for almost $1,400.

22.    On **January 5, 2021**, the plaintiff was driving down the highway heard a rattle going 80 miles an hour, pulled over, and found there were only two lug nuts holding the tire hub on plus the other lug nits had fallen off due to rust.

23.    At this point the plaintiff stopped driving the car.

24.    **On January 30, 2021**, the plaintiff had the vehicle inspected by Midas in Scottsdale Arizona. At the time of this inspection of their 75,173 miles.  See exhibit G, page 3.

25.    The observations reflect the hub was rusted so bad the lug nuts rusted off. Midas stated that the vehicle was unsafe to drive. They also stated that the customer was notified of excessive rust on the body and subframe.  See exhibit G, page 3.

26.    The vehicle was inspected by Roy's automotive on May 24, 2021 who concluded the vehicle should be condemned as soon as possible. See exhibit I.

27.    The plaintiff has attached a copy of the photographs representing the condition of the vehicle as pointed out by the repair facilities in Arizona.  See Exhibit H.

28.    The plaintiff was told that the vehicle was a death trap – do not get into the car.

29.    The defects discovered (post purchase) by the plaintiff are as follows:  **No working airbags, defective brakes, significant rust on the vehicle including the brakes, lug nuts and frame rail and exhaust system.  A  steel plate is welded to the driver seat to hold the body together, under the frame.**

30.    The photographs of the vehicle demonstrate the dangerous condition of the vehicle.  See exhibit H pages 1-3.

31.    The vehicle has little or no value due to the dangerous nature of the defects.

32.    The plaintiff demanded the defendant pay the repair bill on the brakes, he agreed to do this however never provided the plaintiff in any reimbursement for the brakes

## COUNT I – CONSUMER FRAUD – OMISSIONS OF MATERIAL FACT

33.     The plaintiff reasserts the previous facts as if set forth at length herein.

34.     The defendant is the business of buying and selling used vehicles and is an expert in the field. The defendant specifically sells, markets used vehicles to handicapped/disabled customers.

35.     This creates a heightened duty (a duty which already exists) to inspect the vehicle to assure that a handicap/disabled individual can properly use the vehicle for the specific intended purpose which is known to both parties. This would include both operating the vehicle and being able to use the specialized devices installed on these vehicles for their daily activities.

36.     In the plaintiff's instance there was a wheelchair transfer device and special hand controls for the wheels as the plaintiff did not have use of his legs.

37.     The defects observed by the plaintiff within 300 miles from the delivery date demonstrated both in nature of defects and temporal proximity that the selling dealer WAS AWARE of  these defects, especially the extensive rust.

38.     The defendant had the opportunity to take advantage of the plaintiff as the plaintiff was in Arizona and will not have the opportunity to physically look at the vehicle prior to taking delivery.

39.     The photos demonstrate that the issue were "long term" issues not recently rising. Exhibit H.

40. The selling dealer and their agents have the obligation to make these disclosures as they were material defects in the vehicle rendering the vehicle and operable, and unsafe to drive.

41. The selling dealer, assume the obligation to make a very careful, rigorous inspection of vehicles that are being sold to handicapped and or disabled individuals.

42. The dealer has a legal obligation under New Jersey law to inspect all vehicles that are sold to customers and disclose material defects which are known or should be known. N.J.S.A 56:8-68(a).

### **DUTY - CAR SALES Model Civil Charge 5.40 L**

**A used car dealer has the duty of reasonable inspection, testing and warning of any defects, as well as that of reasonable care with respect to any repairs or replacements he may make to the vehicle. The used car dealer is in a better position, by reason of his opportunity, than his average customer, to discover what defects might exist in any particular car to make it a menace to the public. Dealers are required dealers to use reasonable care in inspecting used cars before resale to discover defects, which the customer often cannot discover until too late.**

43. An obligation is imposed by the original contract not to deliver mislabeled articles, and the obligation is imposed with mercantile good faith, so it requires no requirement to the doctrine of consideration. N.J.S.A. 12A:2-314.

44. Omissions of material fact are actionable under the New Jersey Consumer Fraud Act. See Cox v. Sears, 138 N.J. 2, 18 (1994). The New Jersey Supreme Court has held that when an alleged consumer fraud consists of an omission of material fact, the plaintiff must show that the defendant acted with knowledge, and intent is an

essential element. The seminal New Jersey decision pertaining to nondisclosure is Weintraub v. Krobatsch, 64 *N.J.* 445 (1974).

45.    The Supreme Court held that deliberate concealment of a latent defective condition material to the transaction constitutes sufficient grounds to justify rescission of a contract to purchase realty. See Correa v. Maggiore 196 N.J. Super. 273 (1984.) Since rendition of that opinion, this principle has been expanded to permit recovery of monetary damages and has been applied in a broad variety of circumstances. See e.g., Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619 (1981); Carlsen v. Masters, Mates & Pilots Pension Plan, 80 N.J. 334 (1979); Environmental Protection Dep't. v. Ventron Corp., 182 N.J. Super. 210 (App. Div. 1981), modified 94 N.J. 473, 468 A.2d 150 (1983); Neveroski v. Blair, 141 N.J. Super. 365, 358 A. 2d 473 (App. Div. 1976); Berman v. Gurwicz, 178 N.J. Super. 611 (Ch. Div. 1981); Tobin v. Paparone Const. Co., 137 N.J. Super. 518 (L. Div 1975)

46.    The defendant intentionally, omitted material facts with the intention that the plaintiff be misled to induce the plaintiff to buy the handicapped vehicle. These facts include but are not limited to significant rust, broken airbags, nonworking breaks and other conditions which made the vehicle dangerous to drive and specifically, unusable to the plaintiff.

47.    The vehicle has no value to the plaintiff and the plaintiff is asserting that the ascertainable loss is the purchase price tripled under the Consumer Fraud Act plus attorney's fees and costs. The vehicle has no value because it is unsafe to drive. The ascertainable loss under New Jersey law would be the purchase price plus the

incidental expenses of attempting to have the vehicle repaired. These damages would be tripled under the New Jersey Consumer Fraud Act plus attorney's fees and costs of the suit

48.    The defendant was aware that the vehicle has significant defects that affected the use/value and safety. The defects in the plaintiff's vehicle would have been obvious to the seller of the vehicle was an expert in buying selling automobiles.

49.    In addition, the defendant would have had the obligation to research for recalls on the vehicle which would have demonstrated that every call was issued and not completed that was commenced in 2014 which created a safety risk to the vehicle.

50.    A second recall was issued in July 2020 also addressing the safety of the vehicle.

51.    The plaintiff has sustained an ascertainable loss, or a measurable loss associated with the purchase of the vehicle from the defendants.  _Cox v. Sears,_ 138 NJ 2 (1994).

52.    The plaintiff need not show a direct link between the defendant's conduct and the ascertainable loss only a causal nexus between the conduct and the loss.

53.    The defendant violated The New Jersey Consumer Fraud Act, utilized deceptive tactics and practices to sell the subject vehicle to the plaintiff for which the plaintiff sustained an ascertainable loss.  N.J.S.A 56:8-2; N.J.S.A. 56:8-68.

        **Wherefore, the plaintiff(s) demands judgment against the defendant together with interests and costs of the suit, punitive damages, triple damages,**

**attorney fees and any other relief, equitable or otherwise, deemed appropriate by the court.**

## COUNT II – RECISSION/MISTAKE OF FACT

54.    The plaintiff reasserts the previous facts as if set forth at length herein

55.    As an alternative theory the plaintiff asserts that the defendant failed to inspect the vehicle and/or was not aware of the defects including but not limited to the recalls.

56.    The defendant was operating under a mistaken set of facts which would have been that the vehicle is safe to drive without any defects.

57.    The plaintiff was also unaware of the facts and was operating under the mistaken set of facts that the vehicle is safe to drive and operate.

58.    Under a mutual mistake of fact, the plaintiff is entitled to rescind and/or cancel the transaction for which the defendant is on notice.

Wherefore the plaintiff demands judgment against the defendant together with interests and costs of the suit for rescission/contract cancellation

## **COUNT III – Unitemized Documentary Fee/ Fictitious Fee**

59.     The plaintiff reasserts the previous facts as if set forth at length herein.

60.     In addition to the purchase price of the vehicle and sales tax, defendant charged Plaintiff a fee of $199.00 described in the Purchase Contract as the "Doc Fee." The $199.00 is a "documentary fee" as defined by the Automotive Sales Practices ("ASP") Regulations at *N.J.A.C.* 13:45A-26B.1.

61.     The Administrative Code as it applies to the sale and marketing of used vehicles provides for a private right under the Consumer Fraud Act to a plaintiff for improperly itemizing disclosing and collecting "documentary service fees in violation of the Administrative Code.  See  N.J.A.C. 13:45A-26B.4.

62.     The Purchase Contract does not include any itemization of the actual documentary services which were performed in exchange for the fee, setting forth in writing, in at least 10-point type, the price for each specific documentary service, as required by the ASP Regulations at *N.J.A.C.* 13:45A-26B.2 and B(3).

63.     Defendants have adopted a policy and practice in their used car sales of charging and collecting documentary service fees without first itemizing the actual, specific services provided or the prices for those services.

64.     **By accepting, charging, or obtaining monies from Plaintiff that defendants were expressly prohibited from charging by the ASP Regulations, defendants caused Plaintiff ascertainable loss in the amount of the prohibited, unitemized documentary fees charged.**

65.     The 'transfer" fee charged by the defendant is a fictitious fee for which the plaintiff received no services as an alternative to the plaintiff's prior allegations. The defendant is obligated to transfer the vehicle to the plaintiff as the seller of the vehicle. The Administrative Code permits various "documentary service fees" to be charge but there could be restrictions on the method by which these items/fees are charged.

**Wherefore, the plaintiff(s) demands judgment against the defendant together with interests and costs of the suit, punitive damages, triple damages, attorney fees and any other relief, equitable or otherwise, deemed appropriate by the court.**

## CLASS CLAIMS
### COUNT IV – Documentary service fees, unitemized documentary fee. (On Behalf of Plaintiff and the Class)

66.     With respect to Plaintiff and the members of the putative class, the Defendants violated the ASP Regulations at _N.J.A.C._ 13:45A-26B.3(a)(2) by charging customers a "Doc Fee" or similarly labelled charge for documentary services without itemizing the actual documentary service, which was being performed and setting forth, in writing, the price for each specific documentary service.

67.     Defendants' violation of the ASP Regulations constitutes a _per se_ violation of the Consumer Fraud Act.  There is no intent requirement because the selling dealer is presumed to be knowledgeable of the regulations.  A violation of the NJAC creates

a per se Consumer Fraud Act violation. <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 18

(1994)

68. The ASP Regulations *prohibit dealers from charging* documentary fees without

separately itemizing and pricing them as follows:

    **i.**        **In connection with the sale of a motor vehicle, which includes the assessment of a documentary service fee, automotive dealers <u>shall not</u>:**

    **ii.**      **…Accept, charge, or obtain from a consumer monies, or any other thing of value, in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed and setting forth in writing, in at least 10-point type, on the sales document the price for each specific documentary service. *<u>N.J.A.C. 13:45A-26B.3(a)(2)</u>*(emphasis added).**

69. Because Defendant was prohibited from charging its customers the non-itemized

"Doc Fee" or similar non-itemized fee for documentary services, <u>all putative class

members who were charged such a fee suffered ascertainable loss in the amount

of the fee each was charged and paid.</u>

70. Plaintiff suffered an ascertainable loss in the amount of $199.

<u>**COUNT V**</u>

<u>**(On Behalf of Plaintiff and the Entire Class)**</u>

<u>**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA) Predicated on the Defendants' Violations of the CFA and the ASP Regulations**</u>

71. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

72.  The TCCWNA at _N.J.S.A._ 56:12-15, prohibits businesses from offering or entering into written consumer contracts that contain any provision that violates consumer's rights or the business' responsibilities under any other New Jersey or Federal law.

73.  The plaintiff is and aggrieved party under the TCCWNA caused by sustaining an ascertainable loss of $199 from the dealer's charging/collecting a "doc" fee in violation of the Administrative Code

74.  At all times relevant to this matter Defendants were sellers, creditors, or lenders in the transactions with Plaintiff and putative class members.

75.  Plaintiff and putative class members are consumers as defined by TCCWNA.

76.  With respect to Plaintiff and the members of the putative class, the Defendants violated the TCCWNA by offering and entering into sales documents that contained provisions in violation of the CFA at _N.J.S.A._ 56:8-2 and the ASP Regulations at _N.J.A.C._ 13:45A-26B.1 to –26B.3, as described above.

77.  The ASP Regulations and the CFA were clearly established laws at the time the Defendants sold the vehicles to Plaintiff and those similarly situated.

78.  The Plaintiff and all members of the putative the class aggrieved consumers because Plaintiff and all putative class members were charged and paid one or more unlawful fees.

79.    Plaintiff and all members of the putative class were harmed because they all were charged and paid one or more unlawful fees.

80.    By offering and/or entering into written consumer contracts that contained clauses which violated consumer legal rights clearly established by the ASP Regulations and the CFA, the Defendants violated the TCCWNA at _N.J.S.A._ 56:12-15.

81.    The Defendants are, therefore, liable to Plaintiff and the members of the putative class for statutory damages of not less than $100 for each violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to _N.J.S.A._ 56:12-17.

## COUNT VI

**(Declaratory Judgment Pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50 *et seq*. as to Defendants)**

82.    Plaintiff repeats and re-alleges all prior allegations on behalf of himself and the putative the class if set forth at length herein.

83.    The Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50 et seq., provides that "a person interested under a … written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute … [or] contract … may have determined any question of construction or validity arising under the instrument, statute …[or] contract … and obtain a declaration of rights, status or other legal relations thereunder." N.J.S.A. 2A:16-53.

84.    The Motor Vehicle Purchase Contract provided to Plaintiff and putative class members is a contract as contemplated by the Uniform Declaratory Judgments Law.

85.    The Motor Vehicle Purchase Contracts provided to Plaintiff and putative class members violated the ASP Regulations, CFA and TCCWNA as set forth in the First thought Fourth Counts above.

86.    The Defendants violated the ASP Regulations, CFA and TCCWNA in the Motor Vehicle Purchase Contracts provided to Plaintiff and putative class members as set forth in the First though Fourth Counts above.

87.  The Court should enter a declaratory judgment that the provisions of Defendants' Motor Vehicle Purchase Contracts as set forth in the First though Fourth Counts above violate the ASP Regulations, CFA and TCCWNA.

88.  The Court should enter a declaratory judgment requiring the Defendants to correct or remove the provisions in their Motor Vehicle Purchase Contracts as set forth in the First though Fourth Counts above that violate the ASP Regulations, CFA and TCCWNA.

89.  Putative class members should be provided Notice that the Defendants' Motor Vehicle Purchase Contracts as set forth above that violate the ASP Regulations, CFA and TCCWNA.

90.  In addition, putative class members should be provided Notice that they if they were charged any unlawful fees based on the unlawful Motor Vehicle Purchase Contracts provisions as set forth, they have the right to bring an action for damages and civil penalties petition under the CFA and TCCWNA.

91.  Putative class members should be provided Notice that the Defendants' Motor Vehicle Purchase Contracts as set forth above that violate the ASP Regulations, CFA and TCCWNA.

92.  In addition, putative class members should be provided Notice that they if they were charged any unlawful fees based on the unlawful Motor Vehicle Purchase Contracts provisions as set forth, they have the right to bring an action for damages and civil penalties petition under the CFA and TCCWNA.

**CLASS CERTIFICATION ON CLASS ACTION ALLEGATIONS/COUNTS**

Plaintiff includes by reference the facts as set forth above as part of the allegations.  This action is brought and may properly proceed as a class action, pursuant to the provisions of R. 4:32 of the New Jersey Court Rules.  Plaintiff seeks certification of a Class initially defined as follows:

93.    **CLASS DEFINITION (CLASS 1):**  All persons who on the date the complaint is filed and who purchased a motor vehicle from the specified defendant(s) during the proposed class period and whose sales documents indicate that one or both of the following charges were imposed as part of the total purchase price: (1) a  "Doc Fee" or other documentary service fee without an itemization and separate price stated for each service for which the fee was charged;

94.    **TIME PERIOD:** All persons who on the date the complaint is filed and who purchased a motor vehicle from the defendant (s) during the proposed class period and whose sales documents indicate that one or both of the following charges were imposed as part of the total purchase price: (1) a  "Document Fee" or other documentary service fee without an itemization and separate price stated for each service for which the fee was charged

95.    **NUMEROSITY:**  The members of the proposed class, being geographically disbursed and numbering in hundreds or thousands are so numerous that joining all of them is impracticable.

96.   **TYPICALITY:** Plaintiffs' claims are typical of class members claims, as the individual plaintiff purchased a vehicle from the defendant.  The plaintiff, by proving her claim, will be able to presumptively prove the claims of all class members.

97.   **ADEQUACY OF REPRESENTATION:** Plaintiffs' can and will adequately represent and protect the class interest of the class and has no interest that conflicts with or are antagonistic to the interest of the class members.  Plaintiffs have retained attorneys who are compete and experienced in consumer fraud and class action litigation.  No conflict exists between plaintiffs and the other class members because:

98.   The claims of the named plaintiffs are typical of the absent class members claims.

99.   Any claims which plaintiffs assert against the defendant are solely related to the individual transaction as hereinafter alleged can be resolved without any prejudice to the class members.  Such claims can be effectively severed, tried separately or otherwise effectively and efficiently case managed by the trial court.  Such separate claims are set forth-in previous counts of the complaint listed hereto.

100.  All questions of law or fact regarding the liability of the defendant are common to the class and are overwhelmingly predominant over any individual issues, which may exist.

101.  Without class representation provided by plaintiffs virtually no class members would receive legal representation or redress for their injuries.

102.    Plaintiff's counsel has the necessary financial resources to litigate this class action adequately and vigorously.

103.    **<u>QUESTIONS OF LAW AND FACT PREDOMINATE</u>**:  There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals.  These common questions include:

104.    Whether the "Doc Fee" is a documentary service fee as defined by the ASP Regulations at <u>*N.J.A.C.* 13:45A-26B.1</u>;

105.    Whether the Defendants have a policy and/or practice of charging customers a "Doc Fee" or similar charge for documentary services without itemizing the actual documentary service which is being performed and setting forth in writing the price for each specific documentary service, pursuant to the ASP Regulations at <u>*N.J.A.C.* 13:45A-26B.3</u>;

106.    Whether the Defendants overstated and overcharged for title and registration fees;

107.    Whether the Defendants' misrepresentation and overcharge of title and registration fees violated the CFA at <u>*N.J.S.A.* 56:8-2</u>;

108.    Whether by charging more for title and registration fees than the MVC actually charges for registration and transfer of title, the Defendants charged an unitemized documentary fee, in the amount of the excess amount of the fee, in violation of the ASP Regulations at <u>*N.J.A.C.* 13:45A-26B.1</u>;

109.   Whether the title and registration fee overcharge are a documentary service fee as defined by the ASP Regulations at *N.J.A.C.* 13:45A-26B.1;

110.   Whether Defendants' failure to set forth in writing the price for each pre-delivery service performed their sales documents violates the ASP Regulations at *N.J.A.C.* 13:45A-26B.2(a)(2);

111.   Whether the Defendants' violations of the ASP Regulations constitute violations of the CFA;

112.   Whether the aforementioned violations of the CFA or the ASP Regulations on the sales documents constitute violations of TCCWNA;

113.   Whether the ASP Regulations prohibited the Defendants from charging the non-itemized documentary service fees;

114.   Whether customers whom Defendants charged non-itemized documentary service fees suffered ascertainable loss in the amount of the fees;

115.   **SUPERIORITY:**  Class action is superior to any other available method for fair and efficient adjudication of this controversy given;

116.   Questions of Law and Fact overwhelmingly predominate over any individual questions that may arise, resulting in enormous economies to the Court and parties in litigating the common issues on a class wide instead of a repetitive individual basis.

117.    The relatively small size of each class members individual damage claim which is too small to make an individual litigation an economically viable alternative such that a practicable matter there is no alternative means of adjudication in the class action;

118.    Few class members have any interest in individually controlling the prosecution of separate actions;

119.    Despite the relatively small size of individual class member claims, their aggregate volume coupled with economies of scale inherent in litigating similar claims on a common basis will enable this class action to be litigated on a cost-effective basis, especially compared with repetitive individual litigation;

120.    No unusual difficulties are likely to be encountered in management of the class action.

121.    The class, of which Plaintiff is a member, are readily identifiable from the Defendants' sales records.

122.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the class are significant, the amount is modest compared to the expense and burden of individual litigation. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

123.    The Defendants have acted, or refused to act, on grounds generally applicable to Plaintiff and all class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

124.    A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

125.    Plaintiff does not anticipate any difficulty in the management of this litigation.

**DAMAGES AND INJUNCTIVE RELIEF**

The plaintiff and class members have been damaged by the actions of the defendant's charging for an unitemized "doc" or documentary service charge in contrary to New Jersey Law sustaining an ascertainable loss, which include $100 statutory damages for violations of Truth in Contract and Warranty Act

**Prayer for relief**

a) Certification of the class for claims for equitable relief under the CFA including an injunction against future similar violations of the ASP Regulation, pursuant to R. 4:32-1(b)(2), with Plaintiff appointed as class representative, and Plaintiff's counsel appointed as class counsel;

b) Appointment of Plaintiff as class representative and his attorneys as Class Counsel;

c) As to the Class, Declaring the Document Fee and Buyer's Fee provisions in the Defendants' Motor Vehicle Purchase contract are unlawful;

d) Requiring Defendants to provide notice to Plaintiff and the Classes:

e) As to the Class, informing class members  that provisions in the Defendants' Motor Vehicle Purchase contract are unlawful and that each class member is entitled to relief pursuant to the CFA and TCCWNA due to the unlawful fees charged;

f) Informing the members Class of their right to bring an action pursuant to the TCCWNA to recover: (1) "a civil penalty of not less than $100.00"; (2) "actual damages" that are in excess of the total

contract amount and (3) "reasonable attorney's fees and court costs…." if they paid any unlawful fees;

g) Informing the members Class of their right to bring an action pursuant to the CFA to recover treble damages, attorney's fees, and costs against Defendants if they paid any unlawful fees; and

h) Providing any further notice or information as the Court requires or deems appropriate.

i) Entry of a judgment in favor of the Plaintiff and all class members against the Defendants jointly and severally, for treble damages under the CFA, at N.J.S.A. 56:8-19;

j) Entry of a judgment in favor of the Plaintiff and all class members against Defendants, jointly and severally, for civil penalties of not less than $100 per class member under TCCWNA at N.J.S.A. 56:12-17;

k) Entry of a judgment against all Defendants, jointly and severally for reasonable attorneys' fees and costs, pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

l) Entry of a judgment for an injunction against the Defendants, prohibiting them from further imposition of unitemized and unspecified documentary service fees and pre-delivery service fees in future vehicle sales in New Jersey, pursuant to the CFA at N.J.S.A. 56:8-19;

m) Entry of a judgment for an injunction against the Defendants, prohibiting them from further imposition of improper sales tax;

n) For a declaratory judgment against all Defendants that Defendants violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 et seq., the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 et seq., N.J.S.A. 56:8-164 and that Defendants violated the New Jersey Uniform Commercial Code (NJUCC), N.J.S.A. 12A: 9-102 et seq.,

o) For an accounting from the Defendants of all amounts obtained from the sale of vehicles to the Plaintiff and the members of the class well as the identification of all the class members.

p) Assessment of pre-judgment and post-judgment interest with respect to all monetary relief requested herein; and

q) Any other relief as the Court deems equitable.

r) Reasonable attorneys' fees and costs of suit in connection with this action;

s) Further necessary and proper relief pursuant to N.J.S.A. 2A:16-60.

t) Such other relief as the Court deems appropriate and just.

**JURY DEMAND**

Plaintiff hereby demands a trial by a jury as to all issues raised in these pleadings.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to the provisions of R. 4:25-4, the Court is advised that JONATHAN RUDNICK, ESQ., is hereby designated trial counsel.

**CERTIFICATION**

I hereby certify that, pursuant to R. 4:5-1(b)(2), this matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration, nor is any action or arbitration proceeding contemplated.

BY: */s/ Jonathan Rudnick, Esq.*
Attorney ID No.  034721990


Dated:    May 25, 2021